# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CARLOS D. ROBLES, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | CAUSE NO. 3:14-CV-321 |
| TEXAS TECH UNIVERSITY HEALTH | § | |
| SCIENCES CENTER a/k/a TEXAS TECH | § | |
| UNIVERSITY HEALTH SCIENCES | § | |
| CENTER AT EL PASO and BRADLEY P. | § | |
| FUHRMAN, M.D., in his official capacity; | § | |
| and RICHARD LANGE, M.D., in his | | |
| official capacity, | | |
| *Defendants.* | | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Defense
Litigation

ANGELA V. COLMENERO
Division Chief - General Litigation

ESTEBAN S.M. SOTO
Texas Bar No. 24052284
Assistant Attorney General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4099
(512) 320-0667 FAX
Esteban.soto@texasattorneygeneral.gov

***ATTORNEYS FOR DEFENDANTS***

## TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................................ii

TABLE OF AUTHORITIES ................................................................................................ iv

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT....................................1

II.     EVIDENCE.........................................................................................................2

III.    STATEMENT OF UNDISPUTED FACTS ........................................................3

    A.    Robles' Disabilities ................................................................................3

    B.    Robles' Employment at TTUHSC ............................................................3

    C.    Robles' Alleged Request for a Reasonable Accommodation ...................4

    D.    Robles' Disciplinary History....................................................................5

    E.    Robles' Termination..............................................................................7

IV.     STANDARD FOR SUMMARY JUDGMENT .............................................................8

V.      ARGUMENTS AND AUTHORITIES........................................................................8

    A.    Applicable Law Governing Robles' Claims of Disability
       Discrimination ........................................................................................8

    B.    Robles Cannot Establish a Prima Facie Case for Any of His Claims. ......................9

      1.   Robles cannot establish that he was denied reasonable
         accommodations. ..........................................................................9

        a.   Robles' admission to the EEOC that he did not request reasonable
           accommodations bars this claim for a failure to exhaust
           administrative remedies and judicially estops him from asserting
           otherwise now.........................................................................9

        b.   Robles did not exhaust his reasonable accommodation claim with
           the EEOC within the required 300 days. .............................................11

        c.   Robles' alleged request to be transferred to an entirely different
           position that did not have a vacancy is not a reasonable
           accommodation. .....................................................................11

      2.   Robles cannot establish a prima facie case for his termination based
         claims. ..........................................................................................12

a.    Robles' Rehab Act claim based on his termination must be dismissed because he is alleging that there were multiple causes that contributed to his termination.......................................................12

b.    Robles' ADA claims for prospective injunctive relief should be dismissed because he is not currently "qualified" for the position and therefore there is no ongoing violation...........................................16

c.    In any event, Robles cannot establish a prima facie discrimination claim because he was not treated less favorably than a similarly-situated comparator outside his protected class ...................................17

C.    Defendants Had Legitimate, Non-Discriminatory Reasons for Terminating Robles' Employment. .........................................................18

VI.    PRAYER FOR RELIEF..................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Accord Whitaker v. Tenn. Valley Auth. Bd. of Dirs*., No. 3:08-1225, 2010 U.S.
   Dist. LEXIS 37177, 2010 WL 1493899 (M.D. Tenn. Apr. 14, 2010)................................ 14, 15

*Alfano v. Bridgeport Airport Servs., Inc.,* No. 3:04cv1406, 2006 U.S. Dist. LEXIS
   46790, 2006 WL 1933275 (D. Conn. July 12, 2006) ............................................. 14

*Alton v. Texas A&M Univ.,* 168 F.3d 196 (5th Cir. 1999) ............................................. 8

*Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005)............................................. 8

*Blakely v. Nestle Waters N. Am., Inc.,* No. 12-1393, 2015 U.S. Dist. LEXIS
   50178, 2015 WL 1737816 (E.D. La. Apr. 16, 2015)............................................. 10

*Burch v. City of Nacogdoches*, 174 F.3d 615 (5th Cir. 1999)............................................. 12

*Capozzelli v. Allstate Insur. Co*., no. 13-0260, 2014 U.S. Dist. LEXIS 23270,
   2014 WL 786426 (E.D. Tex. Feb. 24, 2014) ............................................. 10

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................. 8

*Cohen v. Univ. of Tex. Health Sci. Center at Tyler,* 2013 WL 1281840 (E.D. Tex.
   March 25, 2013)............................................. 8

*Colson v. Grohman,* 174 F.3d 498 (5th Cir. 1999) ............................................. 8

*Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir. 1995) ............................................. 12

*Deines v. Tex. Dept. of Protective and Regulatory Servs*., 164 F.3d 277 (5th Cir.
   1999) ............................................. 20

*Foreman v. Babcock & Wilcox Co*., 117 F.3d 800 (5th Cir. 1997) ............................................. 12

*Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011)............................................. 8

*Gerald v. Univ. of S. Miss,* No. 2:12-cv-147-KS-MTP, 2014 U.S. Dist. LEXIS
   5019, 2014 WL 172113 (S.D. Miss. Jan. 15, 2014) ............................................. 13, 14

*Griffin v. City of Dallas*, 26 F.3d 610 (5th Cir.1994) ............................................. 9

*Hamilton v. Southwestern Bell Telephone Co*, 136 F.3d 1047 (5th Cir. 1998) ............................................. 20

*Harris v. Marathon Oil Co.*, 948 F. Supp. 27 (W.D. Tex 1996) ............................................. 17

*Hockman v. Westward Comm., LLC*, 282 F.Supp.2d 512 (E.D. Tex. 2003) ............................................. 17

*Hopkins v. Cornerstone America*, 545 F.3d 338 (5th Cir. 2008)............................................. 10

*J.D. v. Georgetown Independent School Dist.*, No. A–10–CA–717 LY, 2011 WL 2971284 (W.D. Tex. July 21, 2011) ........................................................ 9

*Johnson v. Thompson*, 971 F.2d 1487 (10th Cir. 1992) ........................................ 14, 15

*Jones v. Potter*, No. Civ. A 06-0048, 2007 U.S. Dist. LEXIS 51319, 2007 WL 2071613 (E.D. La. July 16, 2007) ............................................................ 13, 15

*Kemp v. Holder*, 610 F.3d 231 (5th Cir. 2010) ...................................................... 9

*Latif v. Univ. of Texas Southwestern Medical Center*, 834 F.Supp.2d 518 (N.D. Tex. 2011) .......................................................................................... 18

*Lee v. Kan. City S. Ry.*, 574 F.3d 253 (5th Cir. 2009) .................................... 17

*Lopez v. Kempthorne*, 684 F.Supp.2d 827 (S.D. Tex. 2010) ........................... 17

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 (5th Cir. 1995) .................. 17

*McInnis v. Alamo Community College Dist.*, 207 F.3d 276 (5th Cir. 2000) ............ 9, 16

*McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068 (11th Cir. 1996) ........... 13

*Montgomery v Potter*, 2006 U.S. Dist. LEXIS 100641, 2006 WL 559240 (N.D. Miss 2006) .......................................................................................... 13, 14

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ................ 11

*Pinkerton v. Spellings*, 529 F.3d 513 (5th Cir. 2008) .............................. 8, 13

*Rodriguez v. ConAgra Grocery Prods. Co*. 436 F.3d 468 (5th Cir. 2006) ............. 16

*Shah v. Univ. of Tex. Sw. Med. Sch.*, Civ. Action No. 3:13-CV-4834-D, 2014 U.S. Dist. LEXIS 148796, 2014 WL 5326658 (N.D. Tex. Oct. 20, 2014) ....................... 13

*Soledad v. U.S. Department of Treasury,* 304 F.3d 500 (5th Cir. 2002) .............. 12, 13, 15

*Still v. Freeport-McMoran, Inc.*, 120 F.3d 50 (5th Cir. 1997) ....................... 11

*The State of Texas, et. al., v. Walker*, 142 F.3d 813 (5th Cir. 1998) ............... 8

*Verizon Maryland, Inc. v Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002) ........... 16

*Walton v. Bisco Industries, Inc.*, 119 F.3d 368 (5th Cir. 1997) ..................... 20

*Wheeler v. BL Dev. Corp.*, 415 F.3d 399 (5th Cir. 2005) .......................... 17

*Wheeler v. Miller,* 168 F.3d 241 (5th Cir. 1999) ........................................ 8

**Statutes**

29 U.S.C. § 794(a) ........................................................................................................ 12

29 U.S.C. §791 ....................................................................................................... *passim*

42 U.S.C. § 12101, *et seq* ...................................................................................... *passim*

42 U.S.C. § 12111(8) .................................................................................................... 15

42 U.S.C. § 12112(a) ...................................................................................................... 8

TO THE HONORABLE JUDGE MONTALVO:

COMES NOW Defendants Texas Tech University Health Sciences Center at El Paso ("TTUHSC") and Richard Lange, M.D. and Bradley P. Fuhrman, M.D., in their official capacities ("individual Defendants") (collectively, "Defendants") and hereby move for summary judgment on Plaintiff's claims under Title I of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehab Act"), and ask the Court to dismiss Plaintiff's suit in its entirety with prejudice.

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff, Carlos D. Robles ("Robles"), brings this disability discrimination suit against his former employer TTUHSC and two of its administrators in their official capacities pursuant to the ADA and the Rehab Act.  Armed with only his subjective belief that he was discriminated against, Robles alleges that he was denied a request to be reassigned to another position and subsequently terminated due to his HIV status and depression.

In fact, Robles was terminated for work violations that involved repeated incidents of bullying co-workers; rude and inappropriate conduct towards pediatric patients and parents; insubordination; and, finally, improperly turning away pediatric patients who can came to TTUHSC to get medical treatment.  Indeed, TTUHSC had known for years that Robles suffered from HIV and had given him unprecedented opportunities to improve his performance.  Notably, Robles admits to many of the incidents that led to his discipline and ultimately his termination, but repeatedly argues that his violations were "blown out of proportion."  However, summary judgment is warranted because Robles cannot make out of *prima facie* case for any of his claims and Defendants have legitimate, non-discriminatory reasons for his termination.

As is explained in more detail below, all of Robles claims fail as a matter of law.  First, the Court lacks subject matter jurisdiction over Robles' reasonable accommodations claims because he did not exhaust them with the Equal Employment Opportunity Commission ("EEOC").  Indeed, there is no evidence that Robles ever requested accommodations or to be reassigned positions, and, in fact, he told the EEOC that he never requested accommodations for his disabilities.  Second, Robles' reasonable accommodation claims also fail as a matter of law because it is undisputed that there were no vacancies in the requested position and therefore his alleged accommodation is not "reasonable" as a matter of law.  Third, his Rehab Act claim based on his termination cannot meet the Act's sole causation standard because, in sworn testimony at his deposition, he attributed his termination, in part, to a cause other than his disabilities.  Fourth, Robles' ADA claims must be dismissed because he currently is not "qualified" for reinstatement and therefore cannot show an ongoing violation of federal law under the *ex parte young* exception to Eleventh Amendment immunity.  Fifth, Robles cannot establish a *prima facie* case for his disability discrimination claims because he cannot identify a comparator with a "nearly identical" discipline record who was treated better. Finally, in any event, TTUHSC has legitimate, non-discriminatory reasons for every action it took.

## II.    EVIDENCE

In support of this Motion, Defendants rely on the following evidence, in the attached appendix, all of which is incorporated herein by reference as if set forth in full:

Exhibit A:      Declaration of Alicia Gacharna ("Gacharna Dec.")
Exhibit A-1:   PSS Position Description
Exhibit A-2:   Robles' September 24, 2013, Discharge Letter
Exhibit A-3:   Robles' August 2007 Written Counseling
Exhibit A-4:   Robles' February 2008 Written Counseling
Exhibit A-5:   Robles' April 2008 Written Counseling
Exhibit A-6:   Robles' April 2008 Disciplinary Reprimand

<u>Exhibit A-7</u>:   Robles' September 2011 Disciplinary Reprimand
<u>Exhibit A-8</u>:   Robles' October 2011 Letter of Final Warning
<u>Exhibit A-9</u>:   Robles' April 2013 Letter of Final Warning
<u>Exhibit A-10</u>:  Robles' 2012 Annual Performance Review
<u>Exhibit A-11</u>:  Natalia Campa email to Robles
<u>Exhibit A-12</u>:  TTUHSC September 2013 Memo Recommending Robles' Termination
<u>Exhibit B</u>:     Declaration of Rebecca Salcido
<u>Exhibit B-1</u>:   TTUHSC Operating Policy and Procedure HSC OP 70.31
<u>Exhibit B-2</u>[1]:  Robles' FMLA Application and Documents 2010-2013
<u>Exhibit C</u>:     Robles' EEOC Charge of Discrimination
<u>Exhibit D</u>:     Robles' EEOC Intake Questionnaire
<u>Exhibit E</u>[2]:   Excerpts from Robles' Deposition ("Robles Depo.")

### III.    STATEMENT OF UNDISPUTED FACTS

**A.    Robles' Disabilities**

Robles was diagnosed with Human Immunodeficiency Virus ("HIV") in approximately 1993 or 1994. Robles Depo. 18:20-19:1. Robles took Atripla as medication for his HIV from approximately 1994 until approximately January 2015. *Id.* 22:12-23:18.  In approximately October 2014, Robles was diagnosed with bi-polar depression. *Id.* 30:11-18. Robles' supervisors and co-workers were not aware that he suffered from depression while he was employed at TTUHSC. *Id., see also* Gacharna Dec. ¶ 4.

**B.    Robles' Employment at TTUHSC**

Robles was hired at TTUHSC in 1996 as a patient specialist and coder within the OB-GYN Department.  *Id.* 54:3-55:5.  At the time he was hired, he informed his supervisors that he was HIV positive.  *Id.* 52:22-53:2. Robles was promoted to a position in the Department of Pediatrics ("Pediatrics") in approximately 2000. *Id.,* 56:14-23, 58:17-18.   Robles eventually moved into a patient service specialist position ("PSS") within Pediatrics.  *Id.*   As a PSS, Robles worked

---

[1] Defendants are filing a separate unopposed motion for leave to file Exhibit B-2 under seal because it contains potentially sensitive medical information.
[2] Likewise, Defendants are moving for leave to file Exhibit E under seal because it discusses medical issues. Defendant herein incorporate by reference Exhibits B-2 and E as if they were filed with this motion.

primarily in Pediatrics' Blue Pod processing walk-in pediatric patients. *Id.* 73:25-74:1, 74:16-19. As a PSS, Robles was responsible for assuring the smooth operation of clinic patient flow and serving as the primary contact for patients. *See* Ex. A-1 (position description).  The position required the ability to communicate effectively internally and externally, and also required moderate interaction with co-workers to accomplish work. *Id*.

Robles and his co-workers received instructions from their supervisors not to turn away walk-in patients just because their primary care physician where not at TTUHSC.  *See* Robles Depo. 177:10-18; *see also* Ex. A-11. Instead, in a situation where a patient's primary care physician was no longer at TTUHSC, the establish protocol was for the PSS to complete a primary care physician change to ensure that the patient was seen by a doctor. *Id*.

Robles requested and received various FMLA leave in the years leading up to his termination. *See* Ex. B-2. In 2010, 2011, 2012, and 2013, he requested FMLA leave for various medical issues.[3] *Id*.; *see also* Robles Depo. 32:20-23. None for FMLA leave requested or received in the four years leading up to his terminated related to his HIV or depression. *See* Salcido Dec. ¶ 4; *see also* Ex. B-2; Robles Depo. 95:9-97:23.

## C.    Robles' Alleged Request for a Reasonable Accommodation

Robles never filled out a written reasonable accommodation request while employed at TTUHSC. *See* Salcido Dec. ¶ 3; Robles Depo. 122:8-14. Robles also never made a reasonable accommodation request, whether verbally or in writing, after the first few months of 2013. *Id., see also* Robles Depo. 104:9-105:1. Robles filled out an EEOC Questionnaire on March 22, 2014. *See*

---

[3] This motion refers to the medical information related to Robles' FMLA leave in general terms to avoid publicity disclosing potentially confidential medical information that has not been previously disclosed. The specific bases for the FMLA leave are contained in the FMLA applications and medical records attached as Exhibit B-2 and in the deposition excerpts contained in Exhibit E.

Ex. D.  In this questionnaire, Robles was asked specifically: "[d]id you ask your employer for any changes or assistance to do your job because of your disability?"  *Id.*  Robles checked the box for "no." *Id.* (Question 12).  Robles filled out the questions on this intake questionnaire "accurately and honestly." Robles Depo. 93:23-94:6. Robles' alleged accommodation was to be transferred to an operator position with TTUHSC's Call Center. *Id.* 105:6-15.  That position would have required him to have substantial interaction with patients and co-workers. *Id* 186:23-188:3. At the time of Robles' alleged requests, there were no open vacancies for an operation position within the Call Center, and Robles did not apply for a position. *Id*. 190:9-24.  Robles was not qualified to fill any other clerical position at TTUHSC. *Id*. 242:14-22.

**D.**    **Robles' Disciplinary History**

Robles received numerous written disciplinary actions during the years preceding his termination.  *See* Exs. A-3-A-9.   In August 2007, he was given a verbal written counseling for two incidents in which he demonstrated unprofessional and unacceptable behavior in the workplace towards a patient and co-worker. *See* Ex. A-3.  In February 2008, Robles was written up again for inappropriate conduct towards a patient and patient's mother.  *See* Ex. A-4.  In April 2008, Robles was again written up for rude behavior towards a patient and patient's mother. *See* Ex. A-5.  Also in April 2008, Robles was given a Letter of Disciplinary Reprimand for five incidents that month in which TTUHSC received complaints that he engaged in rude and inappropriate behavior towards patients, patients' parents, and other members of the public. *See* Ex. A-6.  In September 2011, Robles was given another Letter of Disciplinary Reprimand for four incidents: 1) one in which he improperly turned a patient away without consulting the clinic facilitator for the Blue Pod; 2) another incident in which a doctor complained to Robles' supervisor that Robles was behaving rudely and inappropriately towards the doctor's patients; 3) another

incident in which he was sarcastic and mocking towards a supervisor; and 4) one incident in which he turned away a walk-in patient by directing the patient to go to another clinic. *See* Ex. A-7.  In October 2011, Robles received a Letter of Final Warning further disciplining him for another incident of turning a patient away instead of completing a primary care physician change and one incident of insubordination. *See* A-Ex. 8.  Finally, in April 2013, Robles was given another Letter of Final Warning disciplining him for creating an antagonistic work environment by engaging in bullying and intimidating behavior towards a fellow co-worker.  *See* A-Ex. 9.  In total Robles received at least three Letters of Final Warnings during the course of his employment before he was terminated. Robles Depo. 174:20-175:5, 182:10-22.

Robles does not dispute many of the violations documented in his lengthy discipline record. For instance, he does not dispute that patients or patients' parents complained about his conduct. *Id.* 152:16-18. He does not dispute the incident that led to his February 2008 discipline.  *Id.* 162:15-163:4 (only his "mistake" was "blown out of proportion").  He does not dispute the incident with a mother of a pediatric patient that to led to his April 2008 disciplinary counseling record. *Id.* 153:1-24 (only that it was "blown out of proportion"). He does not dispute an incident in which he was "cold" to a provider relation manager over the phone that led to his 2008 reprimand. *Id.* 156:19-157-10 (only disputes that he was "intentionally being disrespectful" to the manager).   He does not dispute the incidents that led to his April 2011 discipline that involved improperly turning away a patient without first calling to see if the doctor was taking walk-ins, or that the doctor complained about the way Robles treated patients. *Id.*  166:5-15. He does not dispute improperly turning away a patient on August 23, 2011. *Id.* 167:21-168:16 (only that it was "blown out of proportion").   He does not dispute that he improperly turned patients away again on August 31, 2011. *Id*. 169:17-170:19.  Or that on the same day, he was caught disobeying his supervisor's

direct instruction and leaving work without permission. *Id.* 170:20-171:19. Likewise, he does not dispute the October 11, 2011, incident involving his failure to do a primary care physician change that, in part, led to his 2011 Letter of Final Warning. *Id.* 177:10-20. He does not deny that multiple co-workers complained that he was rude and bullied them on multiple occasions. *Id.* 180-18-181.1, 183:3-13. Finally, for the September 2013, incident that led to his termination, he does not dispute that a patient's mother complained to his supervisor about his conduct, that he did not actually process the patient's primary care physician change, and that a co-worker in another Pod had to process the patient. *Id.* 196:6-18.

In his 2012 annual performance review, Robles is rated from 1 to 7 with a score of 4 being meets expectations.  *See* Ex. A-10. Robles received an overall evaluation rating of 3.90 or below expectations.  *Id.*  Included in the performance review is a self-evaluation completed by Robles in which he rates himself a 3 or occasionally below expectations in the areas of Compliance, Interpersonal Skills, Professionalism, Service Focus, Teamwork, and Registers and Schedules Appoints for Office Visits Accurately. *Id.*

**E.     Robles' Termination**

Robles had been instructed and disciplined numerous times to not turn patients away.  *See e.g.* Exs. A-7, 8, 11.  Nevertheless, on September 10, 2013, he once again improperly turned a walk-in pediatric patient away without first attempting to complete a primary care physician change. *See* Ex. 12. As a result, the patient had to go to another Pod to be processed by another co-worker. *Id.*, Robles Depo. 196:6-18. The patient's mother also complained to Robles' supervisors about his conduct. *Id.* Robles supervisor determined that his actions potentially compromised patient care, upset a patient's parent, projected a negative professional image through his conduct, and required a co-worker to complete work that should have completed by

him. *See* Ex. A-12, p. 2.  This incident, combined with Robles' prior disciplinary history and that

fact that he had failed to improve his performance, led to the decision to terminate his employment

on September 24, 2013. *Id., see also* Ex. A-2; Gacharna Dec. ¶¶ 6, 11-12.

## IV.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323

(1986). For this analysis, the evidence is examined in the light most favorable to the nonmovant.

*Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir. 1999); *The State of Texas, et. al., v. Walker,* 142

F.3d 813, 818 (5th Cir. 1998). But "[w]here critical evidence is so weak or tenuous on an essential

fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming

that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v.*

*Texas A&M Univ.,* 168 F.3d 196, 199 (5th Cir. 1999). "If the record as a whole could not lead a

rational jury to find for the nonmoving party, there is no genuine issue for trial and summary

judgment is warranted." *Wheeler v. Miller,* 168 F.3d 241, 247 (5th Cir. 1999).

## V.   ARGUMENTS AND AUTHORITIES

### A.   Applicable Law Governing Robles' Claims of Disability Discrimination

Under Title I of the ADA,[4] an employer cannot discriminate against a "qualified individual

on the basis of disability in regard to…discharge of employees." 42 U.S.C. § 12112(a). Under the

*McDonnell Douglas* burden-shifting analysis, a plaintiff must first make a *prima facie* showing of

---

[4] "Section 504 [of the Rehabilitation Act] and the ADA are generally interpreted *in pari material*, meaning they are construed together." *Cohen v. Univ. of Tex. Health Sci. Center at Tyler,* 2013 WL 1281840, at *4 (E.D. Tex. March 25, 2013) (citing *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011)). The analysis applicable to an ADA claim is used when considering a claim brought pursuant to the Rehab Act. *Pinkerton v. Spellings*, 529 F.3d 513-516-17 (5th Cir. 2008). "The only material difference between the ADA and Section 504 lies in their respective causation requirements." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citation omitted). The Rehab Act prohibits discrimination "solely by reason" of a disability, whereas the ADA applies even if discrimination is not "the sole reason" for the challenged action. *Id.*

disparate discrimination by establishing that: (1) he is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; (4) he was replaced by or treated less favorably than non-disabled employees. *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000). "Once the plaintiff makes [her] prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id*. at 280. "Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Id*.

**B.   Robles Cannot Establish a Prima Facie Case for Any of His Claims.**

**1.   ROBLES CANNOT ESTABLISH THAT HE WAS DENIED REASONABLE ACCOMMODATIONS.**

*a.   Robles' admission to the EEOC that he did not request reasonable accommodations bars this claim for a failure to exhaust administrative remedies and judicially estops him from asserting otherwise now.*

Both the ADA and the Rehab Act prohibit discrimination of qualified individuals with a disability in the employment setting.  *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).    In Texas, both statutes require the filing of a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred.  *Griffin v. City of Dallas*, 26 F.3d 610, 612 (5th Cir.1994) (300 day limitation period applies to Title VII claims); *J.D. v. Georgetown Independent School Dist.*, No. A–10–CA–717 LY, 2011 WL 2971284, at *10 n.5 (W.D. Tex. July 21, 2011) (discussing that the ADA and Rehab Act adopt the same exhaustion requirements as Title VII for employment discrimination claims).  Here, Robles pleads he was denied reasonable accommodations.  *See* Doc. no. 11, ¶¶ 35, 39-41, 66, 78. However, Robles never raised any factual allegation related to a denial

of reasonable accommodations in his EEOC charge. *See* Exhibit C (EEOC charge).   Instead, Robles' EEOC charge alleges only that he was terminated due to disability discrimination. *Id.* This failure to exhaust administrative remedies bars any reasonable accommodation claim in this lawsuit.  *See e.g. Blakely v. Nestle Waters N. Am., Inc.,* No. 12-1393, 2015 U.S. Dist. LEXIS 50178, 2015 WL 1737816 at *4 (E.D. La. Apr. 16, 2015) (failure to include factual allegation related to a denial of an accommodation request in EEOC charge deprives court of jurisdiction over a subsequent reasonable accommodation claim); *see also Capozzelli v. Allstate Insur. Co*., no. 13-0260, 2014 U.S. Dist. LEXIS 23270, 2014 WL 786426, at *4 (E.D. Tex. Feb. 24, 2014).

Moreover, there is no evidence—other than Robles' naked allegations two years later— that he ever requested reasonable accommodations.  Indeed, Robles' own statements to the EEOC belies his current allegations. Robles filled out an EEOC intake questionnaire on March 22, 2014. *See* Exhibit D.  In this questionnaire, Robles was asked specifically: "[d]id you ask your employer for any changes or assistance to do your job because of your disability?"  Robles checked the box for "no." *Id.* (Question 12). At his deposition, Robles confirmed that he filled out all of the questions on this intake questionnaire "accurately and honestly." Robles Depo. 93:23-94:6.

Robles' statement to the EEOC that he never asked for accommodations because of his disability should now judicially estop him from taking an inconsistent position in response to summary judgment. *See Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008) ("Judicial estoppel is an equitable doctrine that prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.") (citations and internal quotation marks omitted). Furthermore, it also establishes that Robles failed to exhaust a reasonable accommodation claim with the EEOC. Accordingly, summary judgment

on Robles' reasonable accommodation claims is warranted because the Court lacks subject matter jurisdiction.

        b.     *Robles did not exhaust his reasonable accommodation claim with the EEOC within the required 300 days.*

When a plaintiff fails to file his EEOC charge within 300 days of the complained-of action, claims based on that action are time-barred. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Here, Robles alleges that he made two "reasonable accommodation" requests to be transfer to a different position within TTUHSC's Call Center. At his deposition, Robles was unable to give specific dates in which he made those two alleged requests. However, he testified the first alleged request occurred in "late 2012" and the second, and final, alleged request occurred "in the first few months of 2013." Robles Depo. 104:9-105:1. Accordingly, Robles' reasonable accommodation claims are also time-barred because he did not exhaust them within 300-days of his March 27, 2014, EEOC charge. *See* Exhibit C.

        c.     *Robles' alleged request to be transferred to an entirely different position that did not have a vacancy is not a reasonable accommodation.*

Finally, Robles' reasonable accommodation claims also fail on their merits.[5] Robles' alleged accommodation was to be transferred to an "operator" position within the TTUHSC's Call Center. Robles Depo. 105:6-15. However, this accommodation was not reasonable for two reasons. First, at the time there was no full-time operator position open within the Call Center. *Id*. 190:9-24. Robles therefore wanted a new position to be created for him, which is something that the law does not require. *See Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 53 (5th Cir. 1997) (stating that

---

[5] To establish a prima facie case of discrimination based on failure to accommodate a disability, Plaintiff was required to show: (1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation. *See, e.g., Bridges v. Dep't of Soc.* Serv., 2001 WL 502797, *1 (5th Cir. Apr. 27, 2001) (citing *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995)).

an employer has "no contractual or statutory obligation to create a new job" for a disabled employee); *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995) (stating that an employer is not "required to find or create a new job for the plaintiff"). Accordingly, Robles' alleged requested accommodation was not reasonable. *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.").

Second, Robles cannot establish that a reassignment to an operator position within the Call Center would have accommodated his disability, or that he was qualified for the position. Notably, it is an essential element of a PSS and an operator to interact with co-workers and the public. Gacharna Dec. ¶ 3; *see also* Robles Depo. 186:23-187:17. Therefore, to the extent that Robles' accommodation was related to his ability to appropriately interact with co-workers or the public, he was not qualified[6] for the reassignment. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

2.   **ROBLES CANNOT ESTABLISH A PRIMA FACIE CASE FOR HIS TERMINATION BASED CLAIMS.**

a.   *Robles' Rehab Act claim based on his termination must be dismissed because he is alleging that there were multiple causes that contributed to his termination.*

The Fifth Circuit in *Soledad v. U.S. Department of Treasury,* determined that the causation standard under the Rehab Act is more stringent than the ADA. 304 F.3d 500, 504 (5th Cir. 2002) (requiring a litigant prove that he or she was discriminated against "solely by reason" of his or her disability in Rehabilitation Act claims); *see also* 29 U.S.C. § 794(a). Therefore, unlike a

---

[6] At deposition, Robles also conceded that he was not qualified to fill any other clerical position at TTUHSC. *See* Robles Depo. 242:14-22.

"motivating factor" [7] or "but for"[8] causation standard that can have more than one cause, the Fifth Circuit requires that "the proper question to be asked in a Rehabilitation Act claim is whether the discrimination took place 'solely because of' the disability." *Soledad*, 304 F.3d at 505. "Indeed, the word solely provides the key: the discrimination must result from the handicap and from the handicap alone." *Jones v. Potter*, No. Civ. A 06-0048, 2007 U.S. Dist. LEXIS 51319, 2007 WL 2071613, at *9 (E.D. La. July 16, 2007) (citation and internal quotes marks omitted).

Since the Fifth Circuit's ruling in *Soledad*, numerous courts in this and other circuits have held that at summary judgment a plaintiff cannot establish a *prima facie* case for a Rehab Act violation if they allege that other factors contributed to the alleged adverse action—even if the other alleged factors are also illegal. *See e.g., Montgomery v Potter*, 2006 U.S. Dist. LEXIS 100641, 2006 WL 559240 at *5 (N.D. Miss 2006), (granting summary judgment on Rehab Act claim because plaintiff could not establish sole causation where plaintiff alleged he was discriminated against because of disability and race); *Gerald v. Univ. of S. Miss,* No. 2:12-cv-147-KS-MTP, 2014 U.S. Dist. LEXIS 5019, 2014 WL 172113, at *14 (S.D. Miss. Jan. 15, 2014) (granting summary judgment on Rehab Act claim because plaintiff could not establish sole causation where plaintiff alleged discrimination based on disability and sex); *Shah v. Univ. of Tex. Sw. Med. Sch.,* Civ. Action No. 3:13-CV-4834-D, 2014 U.S. Dist. LEXIS 148796, 2014 WL 5326658, at *17 (N.D. Tex. Oct. 20, 2014) (dismissing Rehab Act claim because plaintiff could not establish sole causation where plaintiff alleged he was discriminated due to his disability and ethnicity); *Accord Whitaker v. Tenn. Valley Auth. Bd. of Dirs*., No. 3:08-1225, 2010 U.S. Dist.

---

[7] *See Pinkerton v. Spelling*, 529 F.3d 513, 516 (5th Cir. 2008) (In a Rehabilitation Act claim under Section 504, the disability must be the "sole cause" of the adverse employment decision, as opposed to simply a "motivating factor.").
[8] *See e.g. McNely v. Ocala Star-Banner Corp*., 99 F.3d 1068, 1073-77 (11th Cir. 1996) (differentiating the sole causation standard found in the Rehabilitation Act from the "but-for" causation standard adopted by the 11th Circuit in ADA claims)

LEXIS 37177, 2010 WL 1493899, at *5 (M.D. Tenn. Apr. 14, 2010) (granting summary judgment where the plaintiff alleged discrimination either because of his age or purported disability); *Alfano v. Bridgeport Airport Servs., Inc.,* No. 3:04cv1406, 2006 U.S. Dist. LEXIS 46790, 2006 WL 1933275, at *3-4 (D. Conn. July 12, 2006) (dismissing the plaintiff's Rehab Act cause of action since he claimed that his termination was the result of his disability and his refusal to engage in a discriminatory hiring practice); *Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992) (affirming dismissal of Rehab Act claims where plaintiffs alleged discrimination on the basis of disability and socioeconomic status, reasoning "the word solely provides the key: the discrimination must result from the handicap and from the handicap alone. . . . Here, [plaintiffs] allege that the discrimination resulted at least in part from their low socioeconomic status. That discrimination is not actionable under section 504").

For instance, the plaintiff in *Montgomery* alleged that he was discriminated against because of both his disability and race.  2006 WL 559240 at *5.  At summary judgment, the court held that the plaintiff's race discrimination allegations defeated his Rehab Act claim because he could not meet the Act's sole causation element:

> Finally, the Plaintiff alleges that he was discriminated against because of his disability. However, the standard states that it must be the sole reason for discrimination. The Plaintiff here alleges racial discrimination as well. The Plaintiff has in a sense defeated his own case. Since the Plaintiff has alleged more than one reason for discrimination, then his Rehabilitation Act claims fails. The Plaintiff cannot meet the standards for a prima facie case.

*Id.* Likewise, in *Gerald*, the plaintiff attributed his adverse action to both disability and sex discrimination. 2014 WL 172113, at *5.  At summary judgment the court summarily dismissed her Rehab Act claim because "[t]he result of these [sex discrimination] allegations is that Dr. Gerald's '*prima facie* case…fails because under the Rehabilitation Act, [s]he must show that [s]he

was subject to discrimination *solely* because of a disability.'" *Id.,* at *12(emphasis in original)

(quoting *Whitaker*, 2010 WL 1493899, at *5).

Here, the sole causation standard adopted by the Fifth Circuit in *Soledad* requires the

dismissal of Robles' Rehab Act claim based on his termination.  Specifically, at his March 24,

2015, deposition, Robles testified under oath that retaliation based on FMLA leave,[9] not related to

his HIV or depression, contributed to his termination:

> Q. Okay. So you believe that your supervisors in essence kind of held your history
> of FMLA leave against you.
> A. Yes.
> Q. Do you think in any way that contributed to their decision to terminate you in
> 2013?
> A. Yes.
> …
> Q: Do you believe that your history of FMLA leave was held against you and was
> a basis for their termination of you?
> A. Yes.

Robles Depo. 101:5-10; 102:8-11.  Notably, none of the FMLA leave Robles had requested since

2010 was related to his pleaded disabilities. *See* Salcido Dec. ¶ 4; Ex. B-2; Robles Depo. 95:9-

97:23.

The Rehab Act is unique among employment discrimination causes of action in that to

establish a *prima facie* case of disability discrimination, "*there can be no other cause to which*

*discrimination can be attributed aside from the employee's disability.*" *Jones,* 2007 WL 2071613,

at *9 (citing *Johnson,* 971 F.2d at 1493) (emphasis in original). Here, Robles' own deposition

---

[9] Robles was terminated not for disability discrimination or FMLA retaliation, but rather for repeated work violations and the fact that he failed to improve his performance after multiple second-chances. Regardless, Robles' sworn testimony that there was another cause, other than his HIV or depression, that led to his termination defeats his Rehab Act termination claim because, even in the light most favorable to Robles, he still cannot meet the Rehab Act's sole causation standard.

testimony attributes his termination to a cause other than his pleaded disabilities. Accordingly, summary judgment is warranted on Robles' Rehab Act claim based on his termination.

>    b.    *Robles' ADA claims for prospective injunctive relief should be dismissed because he is not currently "qualified" for the position and therefore there is no ongoing violation*

In Robles' operative complaint, he asserts ADA claims solely for prospective injunctive relief. *See* Doc. no. 11, ¶¶ 50-69. Under *ex parte young*, a plaintiff may proceed against individual state officials in their official capacities as long as her complaint (1) "alleges an ongoing violation of federal law" and (2) "seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). To prove a violation of Title I of the ADA, a plaintiff must establish, in necessary part, that they are qualified for the position. *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000). A plaintiff is qualified under the ADA if, with or without reasonable accommodation, the person can perform the essential functions of the position. 42 U.S.C. § 12111(8); *Rodriguez v. ConAgra Grocery Prods. Co.* 436 F.3d 468, 477 n. 32 (5th Cir. 2006). However, here, Robles cannot make a *prima facie* showing under the ADA because he is currently completely disabled and therefore cannot establish that he is qualified for the job at TTUHSC. [10]

At his deposition, Robles admitted that he can no longer work:

Q. Why is that the only job you have applied for?
A. Because I've been feeling bad. I've been feeling sick. And then I'm going to go through surgery. I've been -- I'm in a lot of pain of my -- with my right leg and my hip so I've been dealing with that.
Q. So has that made you unable to work?
A. Now -- now it has, yes.

---

[10] Robles' claims for prospective injunctive relief can also be denied as moot because in his deposition he also testified that he no longer wanted to be reinstated at Texas Tech. *See* Robles Depo. 220:23-221-1 ("Q: Would you want to go back to Texas Tech? A: No. No. Q Would you want to be reinstated? A: No, not at Texas Tech.")

Robles Depo. 220:12-18. This admission that he cannot no longer work prevents him from performing the essential function of his position and therefore he cannot establish an ongoing violation of federal law. *See Harris v. Marathon Oil Co.*, 948 F. Supp. 27, 29 (W.D. Tex 1996) (finding it "impossible" for plaintiff to have been totally disabled under social security law and still able to perform the essential functions of his position under the ADA), *aff'd*, 108 F.3d 332 (5th Cir. 1997)). Accordingly, summary judgment is warranted on all of Robles' ADA claims.

> c.      *In any event, Robles cannot establish a prima facie discrimination claim because he was not treated less favorably than a similarly-situated comparator outside his protected class*

Additionally, Robles cannot meet the fourth prong of his discrimination claims because he cannot identify any non-disabled comparators who were treated more favorably, under nearly identical circumstances. *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259-60 (5th Cir. 2009).

Importantly, similarly situated employees "are employees who are treated more favorably in 'nearly identical' circumstances; the Fifth Circuit defines 'similarly situated' narrowly." *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 856 (S.D. Tex. 2010) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). "The 'nearly identical' standard … is a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be 'nearly identical.'" *Hockman v. Westward Comm., LLC*, 282 F.Supp.2d 512, 527–28 (E.D. Tex. 2003).

Different work histories and disciplinary records render employees not similarly situated. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (plaintiff's arguments "make no reference to the work history of the employee or the amount of damage. Accordingly, they are not evidence that white employees in nearly identical circumstances have been treated differently."); *Latif v. Univ. of Texas Southwestern Medical Center*, 834 F.Supp.2d 518, 527-28

(N.D. Tex. 2011) (granting summary judgment where plaintiff lacked evidence that the comparator also "had disciplinary and professionalism issues throughout his time at UT Southwestern.").

Here, it is undisputed that there are no similarly situated comparators who have engaged in nearly identical violations and have a nearly identical discipline history. As detailed above in the fact section, it is undisputed that Robles had a lengthy disciplinary record that contained documented violations of bullying, inappropriate conduct, insubordination, and improperly turning patients away. *See* Ex. A-3-A-9. There is no other similarly situated employee at TTUHSC that has a nearly identical disciplinary record.  Gacharna Dec. ¶ 13. Indeed, Robles conceded at his deposition that he is not aware of any other PSS who have had three Letters of Final Warning; or has  multiple disciplinary reprimands; or has been formally disciplined for multiple bullying incidents; or has been disciplined for multiple incidents of inappropriate behavior with patients; or been disciplined for multiple violations of not following established protocol for a primary care physician change; or been disciplined for multiple incidents of turning patients away. Robles Depo. 217:21-219:8. These admissions, combined with Robles' inability to point to any comparator with a nearly identical disciplinary record, means that Robles cannot meet the Fifth Circuit's stringent "nearly identical" standard, and thus cannot show a *prima facie* case. *Latif,* 834 F.Supp.2d at 527-28*.* Summary judgment is accordingly warranted.

## C.     Defendants Had Legitimate, Non-Discriminatory Reasons for Terminating Robles' Employment.

Even if Robles could meet his *prima facie* burden, which he cannot, Defendants are entitled to summary judgment on his discrimination claims because, as established in the record herein, Defendants had legitimate, non-discriminatory reasons for terminating his employment. Specifically, Robles was terminated on September 24, 2013, for repeated work violations and for

failing to improve his performance after being disciplined numerous times for the same types of violations. Gacharna Dec. ¶ 6; *see also* Exs. A-2-7, 12.

It is undisputed that in the years leading up to his termination, Robles was disciplined for well documented violations of bullying, inappropriate conduct towards patients and co-workers, insubordination, and improperly turning away pediatric patients. *See e.g.* Exs. A-2-7, 12. Notably, Robles does not dispute many of the violations documented in his lengthy discipline record. For instance, he does not dispute that patients or patients' parents complained about his conduct. Robles Depo. 152:16-18. He does not dispute the incident that led to his February 2008 discipline. *Id.* 162:15-163:4 (only his "mistake" was "blown out of proportion"). He does not dispute the incident with a mother of a pediatric patient that to led to his April 2008 disciplinary counseling record. *Id.* 153:1-24 (only that it was "blown out of proportion"). He does not dispute an incident in which he was "cold" to a provider relations manager over the phone that led to his 2008 reprimand. *Id.* 156:19-157-10 (only disputes that he was "intentionally being disrespectful" to the manager). He does not dispute the incidents that led to his April 2011 discipline that involved improperly turning away a patient without first calling to see if he doctor was taking walk-ins, or that the doctor complained about the way Robles treated patients. *Id.* 166:5-15. He does not dispute improperly turning away a patient on August 23, 2011. *Id.* 167:21-168:16 (only that it was "blown out of proportion"). He does not dispute that he improperly turned patients away again on August 31, 2011. *Id.* 169:17-170:19. Or that on the same day he was caught disobeying his supervisor's direct instruction and leaving work without permission. *Id.* 170:20-171:19. Likewise, he does not dispute the October 11, 2011, incident involving his failure to do a primary care physician change that, in part, led to his 2011 Letter of Final Warning. *Id.* 177:10-20. He does not deny that multiple co-workers complained that he was rude and bullied them on multiple occasions. *Id.* 180-18-181.1,

183:3-13. Finally, for the September 2013 incident that led to his termination, he does not dispute that a patient's mother complained to his supervisor about his conduct, that he did not actually process the patient's primary care physician change, and that a co-worker in another Pod had to process the patient. *Id.* 196:6-18.

An employer has no obligation to tolerate conduct which is illegal or violates work rules simply because the employee is disabled. *See, e.g., Hamilton v. Southwestern Bell Telephone Co*, 136 F.3d 1047 (5th Cir. 1998).  Robles' allegation of discrimination solely comes down to his subjective belief that his work violations were "blown out of proportion" and that he should not have been terminated. Based on this, he invites this Court to impermissibly second-guess TTUHSC's business decision in the guise of a discrimination claim. The Court should decline Robles' invitation. *Deines v. Tex. Dept. of Protective and Regulatory Servs*., 164 F.3d 277, 278 (5th Cir. 1999) ("Whether an employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide. The single issue for the trier of fact is whether the employer's [action] was motivated by discrimination."); *Walton v. Bisco Industries, Inc*., 119 F.3d 368, 372 (5th Cir. 1997) (courts "do not view the discrimination laws as vehicles for judicial-second guessing of business decisions.").

## VI.    PRAYER FOR RELIEF

WHEREFORE, Defendants request that their Motion for Summary Judgment be granted in full, and that judgment be entered dismissing all of Robles' claims with prejudice. Defendants request all other and further relief to which they are justly entitled.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**CHARLES E. ROY**
First Assistant Attorney General

**JIM E. DAVIS**
Director of Defense Litigation

**ANGELA V. COLMENERO**
Chief, General Litigation Division

<u>/s/ Esteban S.M. Soto</u>
**Esteban S.M. Soto**
Assistant Attorney General
State Bar No.24052284
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4093
(512) 320-0667 FAX
Esteban.soto@texasattorneygeneral.gov
ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing document has been filed and served via Electronic Filing Notification System on May 1, 2015:

Soraya Yanar Hanshew
State Bar No. 24047151
THE HANSHEW LAW FIRM
632 Moondale Dr.
El Paso, TX 79912
Telephone: 915/491-6181
Facsimile: 915/996-9907
Email: syhlaw@outlook.com
ATTORNEY FOR PLAINTIFF

                                  /s/ Esteban S.M. Soto
                                  **ESTEBAN S.M. SOTO**
                                  Assistant Attorney General